71 So.2d 843

**ROBINSON v. STATE.**

**6 Div. 618.**

Court of Appeals of Alabama.

Dec. 1, 1953.

Rehearing Denied Jan. 5, 1954.

See also 36 Ala.App. 528, 60 So.2d 302.

Matt H. Murphy, Sr., Birmingham, for appellant.

404

Si Garrett, Atty. Gen., and Wm. H. Sanders, Asst. Atty. Gen., for the State.

PRICE, Judge.

Appellant was convicted under an indictment charging him with the carnal knowledge of, or abuse in the attempt to carnally know, a girl under twelve years of age; and was sentenced to the penitentiary for ten years.

The evidence for the State was to the effect that Marty Binzel, a little girl nine years of age, and her younger brother rode their bicycles to the Shades Cahaba School in Homewood, on the afternoon of July 2, 1952. Defendant was the foreman in charge of a construction project involving the addition of a gymnasium to the school buildings.

Defendant invited the children inside the building to look at some blueprints of the new construction. After a few minutes the little boy went outside and defendant invited the little girl into a bathroom or toilet, where, according to the prosecutrix, he had actual carnal knowledge of her.

One of the workmen employed at the project testified he saw the children with defendant in one of the rooms looking at the blue prints.

There was expert medical testimony that a small abrasion and redness of the genital organs, disclosed by medical examination, could have been caused by an assault such as was described in the evidence. Prosecutrix identified defendant as the man who abused her from a police line-up next day.

The State's evidence was that prosecutrix left home around 3:00 and was gone 45 minutes or an hour.

Defendant testified he went to town after lunch to purchase some parts for a mortar mixing machine and to get a haircut. He returned to the job between 2:30 and 3:00 o'clock and went to a filling station a block away to have some spark plugs cleaned. He was back on the job about 3:15 and spent the remainder of the afternoon working on the mixing machine which had broken down.

He testified he saw no children at the school that afternoon and denied the offense. Various witnesses testified that during the period of time involved defendant was working on the cement mixer.

The filling station attendant testified in rebuttal for the State the spark plugs were cleaned between 1:30 and 2:00 o'clock, and defendant left the station at 2:00 o'clock. Defendant's rebuttal witness testified defendant came to his barber shop around 1:30 and left about 2:00 o'clock.

Numerous witnesses testified to defendant's good character.

■■ The rule is well established that in a criminal case the defendant is not entitled to the general affirmative charge if the evidence affords a substantial inference

against him. Kabase v. State, 31 Ala.App. 77, 12 So.2d 758; Hargrove v. State, 147 Ala. 97, 41 So. 972; Lee v. State, 246 Ala. 69, 18 So.2d 706. Clearly, under the evidence adduced, the general charge was properly refused.

Appellant's counsel argues for a reversal two occurrences during the trial. The first of such incidents complained of was that Alvin Binzel, seven year old brother of prosecutrix, was called as a witness by defendant. Reverend Herman Lowery was brought from defense witness room and caused to stand before the witness. In response to questioning by defense counsel the little boy said he didn't see this man at the school and didn't think he had ever seen him before. At this point defendant's counsel informed the court it had been reported to him that someone in the court room was signalling to the witness.

The court admonished the spectators and advised them that any person found to be conveying directions to the witness as to how he should answer questions would be held in contempt of court and would be dealt with accordingly.

The jury was caused to retire and the offending spectator was called before the court. This was found to be Mr. Binzel, the father of the witness. He denied giving directions to his son as to how the questions should be answered, and stated he merely nodded his head in assent after the answers were made by the witness.

Defendant moved for a mistrial on the grounds the nodding of the father's head in consent or assent to the testimony given by the son was done in the jury's presence, and may have prejudiced the witness in testifying.

The court asked the little boy if he saw his father making any signals and the witness stated he saw his father shake his head once after he had answered a question.

The court overruled the motion for a mistrial and defendant reserved an exception. When the jury was brought back they were interrogated by the court as to whether they had observed Mr. Binzel while the child was testifying. Two jurors answered they saw him reading a newspaper or magazine.

Later in the trial defense counsel recalled the little boy to the stand and in the presence of the jury questioned him as to whether his answers to the questions had been given in response to the nods and shakes of his father's head. The witness said his father had talked with him the day before he was on the stand and told him to answer the questions "yes" or "no." He was looking at his father when he was asked whether he had ever seen Mr. Lowery, and he saw his father shaking his head right after the question was asked, and when another question was asked, his father shook his head up and down. The court asked: "Was that before or after you answered the question." The answer was: "It was after."

Defendant again moved for a mistrial. The court overruled the motion and defendant excepted.

Mr. Binzel was then recalled to the stand by defendant. He stated he had told his son to tell the truth and to answer the questions "yes" or "no." After his son had said he didn't think he had ever seen Mr. Lowery he nodded his head in assent.

■ In situations such as is here presented it is well settled that since the trial court had the opportunity to see and hear everything that transpired, of necessity, much must be left to his sound discretion and his rulings will not be disturbed unless it clearly appears that such discretion has been abused. Swindle v. State, 27 Ala. App. 549, 176 So. 372; Wyatt v. State, 36 Ala.App. 125, 57 So.2d 350, certiorari denied 257 Ala. 90, 57 So.2d 366. We cannot say the action of the court constituted an abuse of the sound discretion vested in him.

The second point argued in appellant's brief occurred during the Solicitor's closing argument. We quote again from the record:

"Mr. Murphy, Jr.: I object to some reference to some Vice-President, as some other case—res inter alias acta in Mr. Perry's argument. It is incompetent and

immaterial and not part of this case, and has no bearing on this case; it is going outside the realm of proper argument.

"Mr. Perry: I am talking about sex fiends and men like this and how they operate.

"The court: I think it is illustrative. Overrule.

"Mr. Murphy, Jr.: We except."

Counsel cites and relies upon the decisions of the courts which hold that a trial judge should be careful to say nothing during the progress of a case which can be construed to the prejudice of accused and argues, "At this point, we have the solicitor calling the defendant a 'sex fiend,' and it is manifest that the court concurred in the opinion of the solicitor, for the court said that the solicitor's remark was 'illustrative,' which means to illustrate or exhibit distinctly. In other words, the solicitor had, in the opinion of the judge, correctly described the defendant, and was anxious for the jury to know what he, the judge, thought about him, this remark constituting as flagrant an invasion of the province of the jury as was ever attempted by a judge in a court of justice."

The fallacy of such argument is that, as we interpret the record, defendant's exception was to the court's overruling of the objection to the Solicitor's argument and not to the court's remarks. In the absence of an exception to the statements of the court they cannot be considered by us on appeal. Stokley v. State, 254 Ala. 534, 49 So.2d 284; Thomas v. State, 126 Ala. 4, 28 So. 591; O'Neal v. State, 18 Ala.App. 425, 93 So. 49; Davis v. State, 20 Ala.App. 131, 101 So. 171.

It is permissible for a Solicitor to comment upon the evils generally of the crime which the law he is seeking to enforce intends to prevent. Dollar v. State, 99 Ala. 236, 13 So. 575; Pitman v. State, 148 Ala. 612, 42 So. 993.

From the recitals in the record we are not informed as to what the Solicitor really said, therefore this ruling of the court is not presented for our review. 7

Ala.Dig.Crim.Law 1119 (4), and cases cited.

No reversible error appearing in the record, the judgment of the trial court is affirmed.

Affirmed.